IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SEMCON IP INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:18-CV-00194-JRG |
| | § | |
| TCT MOBILE INTERNATIONAL | § | |
| LIMITED, TCL COMMUNICATION | § | |
| TECHNOLOGY HOLDINGS LIMITED, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant TCT Mobile International Limited's ("TCT International") Rule 12(b)(2) Motion to Dismiss (the "Motion"). (Dkt. No. 14.) By its Motion, TCT International, a Hong Kong company, asserts that this Court lacks personal jurisdiction over it because it does not manufacture the products made the subject of this suit nor does it import them into the United States or offer to sell or or sell them in the United States. (*See id.* at 1–3.) Having considered the briefing and evidence proffered by the parties, and for the reasons set forth herein, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

### I. Background

Semcon IP Inc. ("Semcon") accuses TCT International of infringing U.S. Patent Nos. 7,100,061; 7,596,708; 8,566,627; and 8,806,247 "by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell and/or importing, products," such as smartphones, that embody these patents (the "Accused Products"). (Dkt. No. 1 ¶¶ 16.) TCT International asserts that it does not manufacture the Accused Products but instead

purchases them from Huizhou TCL Mobile Communication Co. Ltd. ("TCL Huizhou"). (Dkt. No. 29-2, at 1.) TCT International in turn sells the Accused Products to TCT Mobile (US) Inc. ("TCT US"), who then sells the products to retailers in the United States. (*Id.*) TCT International asserts that the sale of the Accused Products to TCT US occurs in Hong Kong, China and that it has no control over TCT US's subsequent importation or sale of these products into the United States and into Texas. (Dkt. No. 33, at 5.) Therefore, TCT International contends that this Court lacks personal jurisdiction over it. (Dkt. No. 14, at 5.)

## II. Legal Standard

Federal Circuit law governs personal jurisdiction where "a patent question exists." *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id.* "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *accord Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) ("California and federal due process limitations are coextensive, and thus the inquiry collapses into whether jurisdiction comports with due process.").

For due process to be satisfied, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "A court must inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether 'the litigation results from alleged injuries that

arise out of or relate to those activities.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361–62 (Fed. Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)).

Upon a showing of purposeful minimum contacts, the defendant bears the burden to prove unreasonableness. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003). In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

"Where, as here, a district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018). "[A] district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

### III. Discussion

TCT International argues that Semcon's ("Semcon") stream of commerce argument is flawed because "Semcon's reliance on the stream of commerce theory continues to neglect the Supreme Court's 2017 *Bristol-Myers Squibb* decision, and in any event relies on TCT [International]'s mere knowledge rather than showing the required purposeful targeting." (Dkt. No. 33, at 1.) The Court disagrees with TCT International on both points. The Court finds that

jurisdiction over TCT International is appropriate under the stream of commerce theory. The Supreme Court's recent *Bristol-Meyers* decision did not abrogate the stream of commerce theory. Moreover, while the Federal Circuit has not yet determined whether the stream of commerce theory requires "an action of the defendant purposefully directed toward the forum state" or "a mere act of placing a product in the stream of commerce with the expectation that it would be purchased in the forum state," the Court finds that jurisdiction is proper in this case under either version of the stream of commerce theory. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1233 (Fed. Cir. 2010) (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987)).

### A. *Bristol-Myers* did not Abrogate the Stream of Commerce Theory

TCT International argues that the stream of commerce theory was abrogated by the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*. 137 S. Ct. 1773 (2017). The Court finds nothing in the Supreme Court's opinion to indicate a shift in the Supreme Court's stream of commerce jurisprudence. Neither the Supreme Court's majority opinion nor Justice Sotomayor's dissent even mention the stream of commerce theory. The Supreme Court does not purport to alter its overall jurisprudence regarding specific jurisdiction, noting instead that the Supreme Court's "settled principles regarding specific jurisdiction control this case." *Id.* at 1781.

In *Bristol-Myers*, the Supreme Court held that a California state court could not exercise personal jurisdiction over Bristol-Myers as to products liability claims related to Bristol-Myers' prescription drug Plavix brought by nonresidents of California who "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not

injured by Plavix in California."[1] *Id.* The Supreme Court rejected the argument that Bristol-Myer's connection with a distributor in California was sufficient to establish personal jurisdiction in California as to injuries that occurred elsewhere, in part because "the nonresidents have adduced no evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them." *Id.* at 1783. In other words, the nonresident plaintiffs did not show that their injuries "arise out of or relate to" Bristol-Myers' connection to California. *Burger King Corp.*, 471 U.S. at 472. By contrast, in this case, the shipment of Accused Products to Texas directly relates to Semcon's claims of patent infringement. *See* 35 U.S.C. § 271(a).

Moreover, the Supreme Court did *not* hold that Bristol-Myers' activities were insufficient to establish personal jurisdiction in the states where the plaintiffs' injuries did occur. To the contrary, the Supreme Court specifically noted that their decision, a "straightforward application . . . of settled principles of personal jurisdiction," did not prevent plaintiffs from pursuing their claims in their home states. *Bristol Meyers*, 137 S. Ct. at 1783. Personal jurisdiction in such states would likely rely on the stream of commerce theory. However, the stream of commerce theory could not establish jurisdiction in California where the plaintiffs did not show that the particular stream of commerce that caused their injury ran through California. [2] *Id.*

While the Federal Circuit has not addressed the stream of commerce theory since the Supreme Court's decision in *Bristol-Myers*, other Courts of Appeal have continued to apply the theory. *See, e.g.*, *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018); *In re DePuy*

---

[1] Bristol Myers is incorporated in Delaware and headquartered in New York with substantial operations in both New York and New Jersey. *Bristol-Myers*, 137 S. Ct. at 1777–78.
[2] Even if *Bristol-Myers* were fairly susceptible to TCT International's interpretation, the Supreme Court expressly declined to decide whether the same result, decided under the 14th Amendment as applied to state courts, would follow under the 5th Amendment as applied to federal courts. 137 S. Ct. at 1784.

*Orthopaedics, Inc., Pinnacle Hip Implant Prod. Litig.*, 888 F.3d 753, 778–81 (5th Cir. 2018); *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (approving of Justice O'Connor's purposeful availment stream of commerce theory). Absent a clear statement to the contrary from the Supreme Court or the Federal Circuit, this Court will continue to apply the existing stream of commerce jurisprudence.

### B. Personal Jurisdiction is Appropriate Under the Stream of Commerce Theory

TCT International argues that application of the stream of commerce theory is inappropriate because it "is neither a manufacturer nor a distributor of the Accused Products in the US." (Dkt. No. 33, at 6.) However, TCT International cites no authority for the proposition that the stream of commerce theory applies only to the entities that manufacture the products and that ultimately sell the products to a retailer, in other words, that it applies only at the beginning and the end of the stream. Instead, TCT International relies on the *Beverly Hills Fan* court's holding that personal jurisdiction may be asserted "over a corporation that delivers *its products* into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." (*Id.* at 7 (emphasis in original) (quoting *Beverly Hills Fan*, 21 F.3d at 1566).) Yet, TCT International admits that it purchases the Accused Products from TCL Huizhou and in turn sells them to TCT US. (Dkt. No. 29-2, at 1.) When TCT International accepts legal title to the Accused Products they become *its products*.

TCT International also argues that it does not make sales *in* Texas nor does it intentionally direct products at Texas. TCT International asserts that TCT US is solely responsible for sales in the United States and Texas. These arguments are similar to those rejected by the Federal Circuit in *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016). In *Polar*, Suunto argued that

personal jurisdiction over it was improper because its sister entity, ASWO, imported the Accused Products into the United States:

> Suunto maintains that it entered into an arms-length agreement with ASWO, pursuant to which ASWO purchases products from Suunto, takes title in Finland, and pays for and directs shipments to the United States. Suunto also maintains that it does not control marketing, distribution, or sales in the United States, and has not visited Delaware to market the accused products.

829 F.3d at 1350. Nonetheless, the Federal Circuit found that Suunto had sufficient contacts with the forum state, Delaware, to sustain specific jurisdiction. *Id.* The Federal Circuit, noting that Suunto had shipped at least ninety-four accused products to Delaware, found that "Suunto did not simply place its products in the stream of commerce, with the products fortuitously reaching Delaware as a result of the unilateral effort of ASWO." *Id.* at 1351. "Rather, 'acting in consort' with ASWO, Suunto deliberately and purposefully shipped the accused products to Delaware retailers." *Id.* (quoting *Beverly Hills Fan*, 21 F.3d at 1566).

Similarly, in this case, Semcon has adduced evidence that TCT International regularly ships Accused Products ordered by TCT US to a warehouse in Fort Worth, Texas. (Dkt. No. 29-5, Exs. D-1–4; Dkt. No. 29-6, Exs. E-1–4.) TCT US complains that one of these invoices appears to evince a sale between TCT US and TCL Huizhou, whose name appears on the header of the invoice. (Dkt. No. 29-5, Ex. D-1.) However, the remaining seven invoices contain no such header. Rather, these invoices list TCT International's name and address in Hong Kong in the footer of the invoice. (Dkt. No. 29-5, Ex. D-2–4; Dkt. No. 29-6, Exs. E-1–4.) These invoices show that TCT International has shipped more than 27,000 Accused Products to Texas since 2015. (*Id.*) Moreover, TCT International's Rule 30(b)(6) witness, Mr. Eric Chan, testified that the company was aware that millions of Accused Products were shipped to Fort Worth, Texas over the last five years. (Dkt. No. 29-4, 25:3–26:17.) Indeed, Mr. Chan testified that he personally travelled to Texas in his capacity as an employee of TCT International to "take a look at the location of our handsets after

they have been sold to [TCT US]." (Dkt. No. 29-4, 26:21–27:15.) The Court finds that this is sufficient evidence that, "acting in consort" with TCT US, TCT International deliberately and purposefully shipped Accused Products to Texas. *See Polar*, 829 F.3d at 1350–51. Thus, the Court finds that Semcon "has made a prima facie showing of minimum contacts under all articulations of the stream-of-commerce test." *Id.* at 1351.

### C. Exercising Personal Jurisdiction is Reasonable and Fair

Finally, TCT International argues that it would be unfair and unreasonable for the Court to exercise personal jurisdiction over it. (Dkt. No. 14, at 8–9.) "The Supreme Court advises that [this] factor applies only sparingly." *Nuance*, 626 F.3d at 1231. "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. 462, 477 (1985)). TCT International has failed to make such a compelling case here.

TCT International argues that its burden to defend itself in Texas is substantial because it is located in Hong Kong and, thus, it will be required to travel a great distance and defend itself in a foreign legal system which differs significantly from the legal system in Hong Kong.[3] (Dkt. No. 14, at 8.) If these factors standing alone were sufficient to deprive U.S. courts of jurisdiction, no holder of a U.S. patent could ever hale a foreign infringer into court. To the contrary, the Federal

---

[3] TCT International also argues that Texas's interest in asserting jurisdiction is "significantly diminished" because TCT International "has not directed any course of conduct at Texas." (Dkt. No. 14, at 9.) This argument, the factual premise of which has already been rejected by the Court, is an argument directed at the "minimum contacts" prong of the jurisdictional analysis, not the "reasonable and fair" prong. *Elecs. For Imaging*, 340 F.3d at 1351–52 ("Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes defendants' burden to present a 'compelling case that the presence of *some other considerations* would render jurisdiction unreasonable.'" (emphasis added) (quoting *Burger King*, 471 U.S. at 477)).

Circuit has made clear that "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995) (quoting *Beverly Hills Fan*, 21 F.3d at 1568).

Importantly, TCT International's arguments are not specific to this Court, but would apply equally to any District Court of the United States. However, this Court "is part of the exclusive mechanism established by Congress for the vindication of patent rights. The fact that it [may have] unique attributes of which plaintiff . . . has an interest in taking advantage does not change the case." *Akro*, 45 F.3d at 1549 (quoting *Beverly Hills Fan*, 21 F.3d at 1568–69). "'[T]hat it is to plaintiff's advantage to adjudicate the dispute in the district court' that it has chosen 'does not militate against its right to have access to that court.'" *Id.* (quoting *Beverly Hills Fan*, 21 F.3d at 1568). Moreover, jurisdiction in this Court is neither unfair nor unreasonable where TCT International "knew the destination of its products, and its conduct and connections with the forum state were such that it should have reasonably have anticipated being brought into court there." *Nuance*, 626 F.3d at 1234 (citing *World-Wide Volkswagen*, 444 U.S. at 292).

TCT International makes several additional arguments in its reply brief that are also unavailing. (Dkt. No. 22, at 8–10.) First, TCT International's argument that there is no interest in vindicating patent rights where no patent infringement has occurred is a merits argument inappropriate for this stage of the proceedings. Second, whether Semcon has its principal place of business in the district is not determinative of its interest in proceeding in its chosen forum. Third, whether this Court would have jurisdiction over TCT US is irrelevant to whether jurisdiction over TCT International is proper. Last, the Court finds that *Diece-Lisa Industries, Inc. v. Disney Store*

9

*USA, LLC*, which held that "a non-exclusive license agreement alone is insufficient to trigger personal jurisdiction over the licensor," is inapposite to the present case, where no such basis for jurisdiction is alleged. No. 2:12-CV-400, 2017 WL 8786932, at *3 (E.D. Tex. Dec. 19, 2017).

## IV. Conclusion

For the reasons set forth herein, TCT International's Rule 12(b)(2) Motion to Dismiss (Dkt. No. 14) is **DENIED**.

**So ORDERED and SIGNED this 1st day of July, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE